UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────────

| | |
|---|---|
| CESAR MARTINEZ, <br><br>　　　　　　　　Petitioner, <br><br>　　　　- against - <br><br>DAVID L. MILLER, Superintendent, <br>Eastern Correctional Facility, and <br>ELIOT SPITZER, New York State Attorney <br>General, <br>　　　　　　　　Respondents. | 02 Civ. 0020 (RCC)(FM) <br><br>ORDER ADOPTING <br>REPORT AND <br>RECOMMENDATION |

**RICHARD CONWAY CASEY, United States District Judge:**

　　On January 2, 2002, Cesar Martinez ("Petitioner") filed a petition for a writ of habeas corpus. By Report and Recommendation dated June 14, 2006 ("Report"), United States Magistrate Judge Frank Maas recommended that the habeas petition be denied and that, pursuant to 28 U.S.C. § 2253(c)(2), a certificate of appealability not issue. For the reasons explained below, the Court adopts the conclusions of the Report, and the petition for a writ of habeas corpus is **DENIED**, and a certificate of appealability will not issue.

**I.　BACKGROUND**

　　The underlying charges against Petitioner arise out of a fifty-count indictment in which he and twenty-three others were charged with, <u>inter alia</u>, participating in a conspiracy to distribute cocaine and other narcotics in Manhattan through an organization known as the "Gerry Curl Gang." Petitioner was tried in New York Supreme Court (the "trial court") alongside four other Gerry Curl Gang members. On March 1, 1993, after a trial that lasted over five months, the jury found Petitioner guilty of Conspiracy in the Second Degree, Criminal Sale of a Controlled Substance in the First Degree, Criminal Possession of a Controlled Substance in the First Degree, and Criminal

Possession of a Weapon in the Third Degree. On April 8, 1993, the trial judge sentenced Petitioner to concurrent indeterminate prison terms of twenty-five years to life on the narcotics counts, and eight and one-third to twenty-five years on the conspiracy and weapons counts.

Petitioner appealed his conviction to the New York Appellate Division, First Department ("Appellate Division"). His appeal was consolidated with those of the four co-defendants with whom he had been tried. On or about August 28, 1995, Petitioner's assigned appellate counsel filed a brief on his behalf. The People filed a brief in response. By memorandum and order dated June 4, 1998, the Appellate Division unanimously affirmed Petitioner's conviction. On November 24, 1998, the New York Court of Appeals denied Petitioner's leave to appeal.

On October 22, 1999, Petitioner filed a pro se motion to vacate the verdict pursuant to New York Criminal Procedure Law § 440.10 on the ground that the enhanced payment arrangements for his court-appointed trial attorney had created a conflict of interest that ultimately deprived him of the effective assistance of counsel. On January 10, 2000, the People filed an opposition to Petitioner's motion. By order dated September 15, 2000, the Supreme Court judge denied the motion. On February 27, 2001, Petitioner's application for leave to appeal the denial was summarily denied by the Appellate Division.

On March 15, 2001, Petitioner applied pro se to the Appellate Division for a writ of error coram nobis. On or about the dates of May 9, 2001 and May 16, 2001, Petitioner filed supplemental papers. In June 2001, the People submitted a memorandum of law in opposition to Petitioner's application. By order dated December 20, 2001, the Appellate Division denied the Petitioner's application without opinion.

On January 2, 2002, Petitioner's retained counsel filed the present petition for a writ of

habeas corpus, accompanied by a memorandum of law.  Petitioner asserted five grounds for relief in support of his position, namely:  (1) that the prosecutor used his peremptory challenges in a racially discriminatory manner; (2) that the trial court improperly ordered closure of the courtroom during the testimony of three undercover police officers; (3) that his appointed trial counsel labored under a conflict of interest that functioned to deprive him of effective assistance of counsel; (4) that the trial court erred in denying his request for a multiple conspiracies charge; and (5) that the trial court's refusal to sever his trial from that of his four co-defendants deprived him of a fair trial.  By papers dated July 25, 2002, the People filed an answer and a memorandum of law in opposition.

On June 14, 2006, Magistrate Judge Maas issued the Report recommending that Petitioner's habeas petition be denied and that a certificate of appealability not issue.  On June 23, 2006, Petitioner timely filed his objections ("Objections") to the Report.

**II.    DISCUSSION**

**A.    Standard of Review for Report and Recommendation**

The Court reviews de novo all portions of a magistrate judge's report to which there are objections. 28 U.S.C. § 636(b)(2); Fed. R. Civ. P. 72(b).  Where there is no objection, a court may adopt those portions of a magistrate judge's report and recommendation that are not the product of clear error.  Pizzaro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991); see also 28 U.S.C. § 636(b)(1).  Where only general objections are filed, the party does not preserve de novo review, see Mario v. P & C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002), and the Court reviews for clear error, see Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985); DeJesus v. Tierney, 2006 WL 839541, at *1 (N.D.N.Y. Mar. 28, 2006).

Here, other than Petitioner's reaffirmation of "each and every claim in the [p]etition," and

his statement that he "maintains that each of the instances of constitutional error presented in the petition for relief warrant the grant of habeas corpus relief," (Pet'r's Objections at 1, 3), Petitioner makes no mention of the Report's denial of his conflict of interest or <u>Batson</u> claims. Accordingly, the Court reviews these claims for clear error. It finds none. Thus, Petitioner's claims that his appointed trial counsel labored under a conflict of interest and that the prosecutor used his peremptory challenges in a racially discriminatory manner are denied. The surviving three claims addressed in the Report—improper closure of the courtroom, failure to sever, and failure to provide a multiple conspiracies charge—were properly objected to and thus are reviewed de novo.

**B.     Legal Standards Governing Review of Habeas Petitions**

A petition for a writ of habeas corpus is granted only when a petitioner is held in custody pursuant to a state-court judgment "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court's review of a habeas corpus petition is restricted by the provisions of § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.

The standard of review employed by a district court in reviewing the state court judgment depends on whether the claims were "adjudicated on the merits." <u>See</u> 28 U.S.C. § 2254. A decision is adjudicated on the merits when it finally resolves the claim, with res judicata effect, and is based on substantive rather than procedural grounds. <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 311-12 (2d Cir. 2001) ("For the purposes of AEDPA deference, a state court 'adjudicates' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment."). It is the state court's ultimate decision, and not its reasoning or the absence of reasoning, that determines whether it was on the merits. <u>See</u> <u>id.</u> at 311-12. Therefore, § 2254(d)

applies "even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." Id. at 312. Indeed, a state court need not even be aware of Supreme Court case law for § 2254(d) to apply. Early v. Packer, 537 U.S. 3, 8 (2002); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002).

A federal court can only grant a habeas petition regarding a claim that was "adjudicated on the merits in State court proceedings" if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). However, if there is no adjudication on the merits, then the pre-AEDPA, de novo standard of review applies. Cotto v. Herbert, 331 F.3d 217, 230 (2d Cir. 2003).

A decision is based on an "unreasonable application" of clearly established Supreme Court case law when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Williams v. Taylor, 529 U.S. 362, 413 (2000). This basis for habeas relief is also appropriate when a state court fails to apply a clearly established legal principle when it should have, in reason, done so. Tueros v. Greiner, 343 F.3d 587, 591 (2d Cir. 2003); see also Kennaugh v. Miller, 289 F.3d 36, 45 (2d Cir. 2002). A habeas court must remember that an unreasonable application of federal law is distinct from an incorrect or erroneous one. Williams, 529 U.S. at 411-12.

State-court adjudication is "contrary to" clearly established Supreme Court case law if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "decides a case differently than [the Supreme Court] has on a set of materially indistinguishable

5

facts." Id. at 413.  The Supreme Court has defined "contrary to" as "diametrically different," "opposite in character or nature," or "mutually opposed."  Id. at 405.

When a state court fails to fully explain a coherent rationale for its rejection of a petitioner's claim, but that rejection nevertheless is clearly on the merits, the habeas court must examine whether the state court unreasonably applied clearly established Supreme Court precedent.  Aparicio, 269 F.3d 78, 94 (2d Cir. 2001).  Therefore, the Court must determine whether the state courts unreasonably applied clearly established Supreme Court precedent in rejecting Petitioner's claims.

Finally, under § 2254(d)(2), for a federal court to find a state court's application of Supreme Court precedent "unreasonable," the state court's decision must have been "more than incorrect or erroneous"; its application must have been "objectively unreasonable."  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

**C.     Petitioner's Objections**

   **1.     Failure to Exhaust and Ineffective Assistance of Counsel**

Aside from two exceptions that are not relevant here, federal habeas review is unavailable unless the applicant has exhausted State remedies.  28 U.S.C. §2254(b)(1)(A).  This requirement is rooted in considerations of federalism, a pragmatic desire to ensure the familiarity of state courts with federal constitutional issues, and a recognition that the federal rights of state criminal defendants must be protected at the state as well as federal level.  Jones v. Keane, 329 F.3d 290, 294 (2d Cir. 2003); Daye v. Attorney General of the State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982). In evaluating whether the exhaustion requirement has been met, the Court must examine whether applicable state court remedies remain available to the petitioner.  First, this requires petitioner must afford the state courts "one full opportunity" to resolve any constitutional issues by invoking one

complete round of a state's established appellate review process, meaning he must have presented his factual and legal claims to the highest court in the state. Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005). Next the Court must determine whether the petitioner "fairly presented" his or her claims to the state courts. Id. at 73-74.

Turning first to the issue of whether Petitioner made one complete round of the State's established appellate review process, the Report concluded that Petitioner's letter seeking leave to appeal[1] "was not enough to alert the Court of Appeals that there were constitutional issues that [Petitioner] wished to present." (Report at 23.) In his Objections, Petitioner agrees with Judge Maas' finding, but asserts that he should be excused from failing to meet this procedural bar on the grounds of ineffective counsel. (Pet'r's Objections at 2.) However, the Court finds that Petitioner did in fact satisfy this prong.

Contrary to Petitioner's assertion that his appellate counsel's "filing [of] a boiler-plate leave application . . . destroyed any hope that Petitioner had of federal review," (Pet'r's Objections at 2), the Second Circuit has held that, "where a habeas petitioner (1) submits to the New York Court of Appeals his or her Appellate Division briefs and a letter application seeking leave to appeal that [does] not identify particular issues for that court's review, and (2) leave to appeal [is] denied by the New York Court of Appeals without stating that the denial [is] due to petitioner's failure to identify particular issues for review, then a habeas petitioner has properly exhausted his or her federal claims

---

[1] By letter dated June 25, 1998, Petitioner's appellate counsel sought leave to appeal to the Court of Appeals. In its entirety, the text of her letter read as follows:
> As attorney for [Martinez], I am submitting this letter in support of the defendant's application for leave to appeal to this Court from the decision and order of the Appellate Division, First Department, which affirmed defendant's conviction and which struck the appellant's reply brief. The Appellate Division briefs and order are enclosed.

pursuant to § 2254." Galdamez, 394 F.3d at 70.  In such a case, "the only 'fair import' of the total application suggests a request for review of all the issues argued to the Appellate Division." Id. at 76.

Here, Petitioner did not specify any particular constitutional issues that he wished to have considered by the Court of Appeals.  His letter seeking leave to appeal simply enclosed the Appellate Division briefs and order without further discussion.  Like the petitioner in Galdamez, Petitioner did not single out a particular claim in his letter that would suggest the abandonment of the remaining claims that he asserted in his appellate brief. Id. at 70. Cf. Jordan v. LeFevre, 206 F.3d 196, 198-99 (2d Cir. 2000) ("[A]rguing one claim in his letter while attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction."); Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) ("The fair import of petitioner's submission to the Court of Appeals, consisting of his brief to the Appellate Division that raised three claims and a letter to the Court of Appeals arguing only one of them, was that the other two had been abandoned."). Rather, the "fair import" of Petitioner's appellate letter was that Petitioner was appealing the entirety of the Appellate Division's decision and order.

Thus, the second inquiry comes to the fore—whether Petitioner fairly presented his claims to the Appellate Division.  The Second Circuit has enumerated four ways in which a habeas petitioner may fairly present the substance of his claims to the state courts even without citing "chapter and verse of the Constitution." Daye, 696 F.2d at 194.  These are:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and

>    (d) allegation of a pattern of facts that is well within the mainstream
>    of constitutional litigation."

Id. Here, Petitioner exhausted his state remedies under a combination of all four of the criteria articulated above. First, in his appellate brief, Petitioner largely supported his claims for failure to provide a multiple conspiracies charge and failure to sever with references to federal case law. Additionally, Petitioner proffered state cases employing constitutional analysis in similar situations to support his failure to sever claim. Second, Petitioner's conflict of interest and Batson claims inherently invoke his constitutional rights to due process and to be tried by "an impartial jury of the state," as protected by the fourteenth and sixth amendments, respectively.

Thus, Petitioner fairly presented to the Appellate Division the substance of his failure to sever, failure to provide a multiple conspiracies charge, conflict of interest, and Batson claims. The sole claim asserted in Petitioner's habeas petition that remains procedurally unexhausted is his claim that the trial court improperly ordered closure of the courtroom during the testimony of three undercover police officers. The Court rejects Petitioner's argument that his allegedly ineffective appellate counsel should excuse his failure to exhaust this claim. Even assuming, arguendo, that Petitioner's appellate counsel's performance was deficient, "[t]he Supreme Court has held that [an] ineffective assistance of appellate counsel claim[] cannot constitute 'cause' for procedural default unless first presented in state court as an independent constitutional claim." Disimone v. Philips, 2006 U.S. App. LEXIS 21578, at *27 (2d Cir. Aug. 22, 2006) (citations omitted). Not only was Petitioner's ineffective assistance of appellate counsel claim not asserted in state court, but also it was not included in his habeas petition. Thus, Petitioner's ineffective assistance of counsel claim is barred for failure to exhaust, and only Petitioner's claims for failure to sever and failure to provide a multiple conspiracies charge remain subject to de novo review.

**2.     Merits of Failure to Sever Claim**

Petitioner argues that, "[i]n light of [his] lesser alleged culpability," the trial court's denial of his request for severance deprived him of a fair trial. (Pet'r's Objections at 3). Specifically, Petitioner alleges in his habeas petition that a prejudicial "spillover" effect resulted from his being tried alongside his co-defendants, and that Richard Giampa ("Giampa"), the attorney for one of the co-defendants, dominated the courtroom with "prejudicial and inflammatory tactics," and "irreparably damaged the fact-finding process." (Pet. at 30.)

Ruling on a motion to sever lies within the sound discretion of the trial judge. Consequently, "[a] defendant raising a claim of prejudicial spillover bears an extremely heavy burden." United States v. Friedman, 854 F.2d 535, 563 (2d Cir. 1988). To show an abuse of discretion, the defendant must demonstrate that "that he or she suffered prejudice so substantial as to amount to a 'miscarriage of justice'." Id. at 563 (internal citations omitted).

Petitioner attempts to support his prejudicial spill-over argument by arguing that there were in fact two conspiracies, distinct both in timing and substance, and that he was only involved with one of them: "[P]etitioner's alleged participation was strictly limited to the transactional arm of the gang which, in itself, constituted a separate and distinct conspiracy." (Pet. at 27). This logic ignores the fact that the case against him arose out of an indictment in which he and twenty-three others were charged on fifty counts with, inter alia, having participated in a single conspiracy to distribute cocaine and other narcotics through the Gerry Curl Gang. In order to subscribe to Petitioner's logic, the Court would have to draw arbitrary distinctions, reading the indictment in a manner that Judge Maas rightly described as "rather tortured." (Report at 36 n.14)

Additionally, Petitioner argues that he suffered a prejudicial spill-over effect because the

"evidence against the co-defendants was in quantity and quality far more substantial than the evidence against [him]." (Pet. at 26). However, the Second Circuit has held that a defendant may be found guilty for a substantive crime committed by his or her co-conspirators notwithstanding the absence of specific evidence that the defendant committed the offense. United States v. Diaz, 176 F.3d 52, 83 (2d Cir. 1999). All that is required is that the offense was committed in furtherance of an unlawful conspiracy, and that the defendant was a member of that conspiracy. Id. Here, the record shows that most of the death threats and violent acts undertaken by Petitioner's co-defendants were in furtherance of the narcotics conspiracy. (Rep. at 35). Additionally, the Appellate Division found that the "[trial] court properly denied the motion[] for severance made by [Petitioner], since the offenses were based upon a common scheme or plan, the proof at trial was provided by much of the same evidence, and there was no evidence of conflicting defenses." People of the State of N.Y. v. Gonzalez, 673 N.Y.S.2d 669, 671 (N.Y. App. Div. 1998). Accordingly, even had Petitioner's motion for severance been granted, the evidence at issue would have been admissible at his trial. Thus, Petitioner has failed to show that, as a result of the trial court's denial of his motion for severance, he suffered any unfair prejudice whatsoever, much less an amount so substantial as to constitute a miscarriage of justice.

      Turning to Petitioner's second argument in support, that Giampa's conduct so dominated the trial that he suffered prejudice as a result, we note that both Petitioner and Respondents agree that the trial was extremely contentious, and that this was due, in large part, to Giampa. Assuming for the sake of analysis that prejudice could have resulted, the issue is whether such prejudice was cured by the trial judge's instructions to the jury to disregard her discussions with Giampa, to decide the case based solely on evidence, and to consider each defendant's respective

guilt or innocence separately.

In general, juries are presumed to follow their instructions. Richardson v. Marsh, 481 U.S. 200, 211 (1987). However, while "[i]t is not unreasonable to conclude that . . . the jury can and will follow the trial judge's instructions to disregard such information . . . there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." Bruton v. United States, 391 U.S. 123, 135 (1968).

Here, Petitioner fails to satisfy Bruton's exception. There is no reason to believe that Giampa's conduct could not be remedied by a jury instruction. Petitioner's trial was the product of a two-year investigation. Trial took more than five months, during which the People introduced police witnesses and testimony from numerous former associates of the Gerry Curl Gang. As the Appellate Division properly noted, "[i]n light of the overwhelming evidence of guilt, there is no reasonable possibility that the exchanges between Giampa and the trial court had any effect on the verdict." Gonzalez, 673 N.Y.S. at 671. Petitioner presents no evidence to suggest that the jury did not follow the trial judge's instructions. Thus, even presuming that Giampa's conduct had some prejudicial effect, in light of the trial court's limiting instructions and the wealth of evidence introduced by the People, it would not suffice as grounds for granting habeas relief.

In sum, Petitioner has failed to show that trial court's denial of his request for severance was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." §

2254(d)(1), (2).  Accordingly, Petitioner's claim that the trial court's refusal to sever warrants habeas relief is **DENIED**.

**3.       Merits of Failure to Provide Multiple Conspiracies Charge Claim**

Although he does not expressly say so in his objections, Petitioner appears to object to Judge Maas' denial of his claim that the trial court erred in failing to provide a multiple conspiracies charge.[2]  In affirming Petitioner's conviction, the Appellate Division found that the trial court "properly rejected [Petitioner's] proposed multiple conspiracy charge, which lacked evidentiary support."  Gonzalez, 673 N.Y.S. at 672.  In order to prevail in this forum, Petitioner must show that this state court decision "was based on an unreasonable determination the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1).  Specifically, the Court must find both the existence of a variance between the indictment, which alleged a single conspiracy, and the proof at trial, which Petitioner alleges evidences multiple conspiracies, and that such a variance denied Petitioner a fair trial.  United States v. Johansen, 56 F.3d 347, 350 (2d Cir. 1995).

First, in determining whether a jury could have found a single conspiracy, three factors are relevant:  "(1) whether there was a common goal, (2) the nature of the scheme, and (3) overlapping of participants in the various dealings." 1 Leonard B. Sand, et al., Modern Federal Jury Instructions 19-30 (1995).  Here, the first two factors undoubtedly weigh against a multiple conspiracies charge.  Petitioner and the twenty-three others who were indicted alongside him

---

[2] In his Objections, Petitioner argued "[a]t every stage of litigation, each of the charged defendants in this conspiracy trial must be judged as individuals who allegedly acted in concert . . . In light of [] Petitioner's lesser alleged culpability, the issues . . . all become . . . different, and stronger, issues for him than they were for his more culpable co-defendants. (Pet'r's Obj. at 3).

were all members of the Gerry Curl Gang. Typically, the gang members would gather at 157th Street and Broadway in the early afternoon, make actual sales of drugs or weapons, and stay in contact with each other throughout the day. During the average day, the gang would sell as much as one and one-half kilograms of cocaine to approximately thirty customers for as much as $25,000 in cash. The extent to which the gang members were in continual contact with one another, combined with the fact that they essentially operated the gang as an organized business, render no doubt as to whether there was a common goal and unified scheme.

Insofar as the third factor, the prosecutor conceded at sentencing that Petitioner was not involved in the murders and other acts of violence ascribed to his co-defendants in the indictment. However, in the course of his participation in the conspiracy, Petitioner was not a stranger to violence. For example, in September 1989, Petitioner was wounded in a gun battle that erupted as he resisted a robbery of the gang's cocaine. On that occasion, after Petitioner went to one of the gang-controlled apartments, two men pushed their way into the apartment and began shooting at him; Petitioner fired back. Moreover, "a single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance." United States v. Maldonado-Rivera, 922 F.2d 934, 963 (2d Cir. 1990). As already noted, the gang operated as an organized unit, and although Petitioner was not directly involved in the acts of violence with which some of his co-defendants were charged, he managed the business when his cohorts were not present. Given the extent to which the gang members' activities were intertwined, the trial court's denial of Petitioner's request for a multiple conspiracies charge cannot be deemed to have been an abuse a discretion.

In any event, even if the trial court should have delivered the requested charge, its failure to do so did not prejudice Petitioner. Petitioner conceded in his appellate brief that a conspiracy did exist to sell narcotics and that he managed the Gerry Curl Gang's activities when his cohorts were not around. It baffles logic for Petitioner to now claim that he was denied a fair trial by the trial court's failure to ask the jury to consider whether certain of his co-defendant's activities were undertaken in furtherance of a second conspiracy.

Thus, Petitioner has failed to show any variance whatsoever between the indictment and the proof at trial, much less one that functioned to deny him a fair trial. Accordingly, he cannot successfully invoke § 2254(d)(2), and his claim the trial court's denial of his request for severance warrants habeas relief is **DENIED**.

### III. CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus is **DENIED** in its entirety. Further, because Petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue. 28 U.S.C. § 2253(c)(2); United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997), cert. denied, 525 U.S. 952, 119 S.Ct 384, 142 L.Ed.2d 318 (1998). The Clerk of the Court is directed to close the docket in the above-captioned case.

**SO ORDERED:**   New York, New York
December 6, 2006

*Richard Conway Casey*
─────────────────────────
**Richard Conway Casey, U.S.D.J.**